Emma STATON *v.* ARKANSAS STATE BOARD of
COLLECTION AGENCIES and American Manufacturers
Mutual Insurance Company

07-53 277 S.W.3d 190

Supreme Court of Arkansas
Opinion delivered February 21, 2008

*Todd Turner* and *Dan Turner*; and *Orr, Scholtens, Willhite & Averitt, PLC*, by: *Chris Averitt*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Arnold M. Jochums*, Ass't Att'y Gen., for appellee Arkansas State Board of Collection Agencies.

*Wright, Lindsey & Jennings, LLP*, by: *Paul D. Morris*, for appellee American Manufacturers Mutual Insurance Company.

DONALD L. CORBIN, Justice. Appellant Emma Staton, individually and on behalf of similarly situated persons, appeals the order of the Pulaski County Circuit Court affirming a decision of Appellee Arkansas State Board of Collection Agencies that she was not entitled to proceeds from surety bonds issued by Appellee American Manufacturers Mutual Insurance Company. On appeal, Staton argues that the trial court erred in (1) ruling that the surety bonds did not apply to the loss suffered by Staton, and (2) failing to interpret the bonds in favor of coverage. As this is a second appeal, *see Staton v. American Manufacturers Mutual Insurance Co.*, 362 Ark. 96, 207 S.W.3d 456 (2005) (*Staton I*), our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7).

The record reveals that Staton engaged in deferred-presentment transactions with Kentucky Cash Connection, LLC (KCC), a deferred-presentment corporation licensed by the Board, under the Arkansas Check-cashers Act, codified at §§ 23-52-101 to -117 (Repl. 2000 & Supp. 2007), to conduct business in Arkansas under the name America$h. Staton subsequently brought suit against KCC, on April 24, 2001, in Pulaski County Circuit Court on behalf of herself and all similarly situated persons, alleging that the fees KCC charged for its transactions amounted to

usurious rates of interest. America$h ceased doing business in Arkansas on or about November 30, 2001. Following entry of summary judgment in her favor, the circuit court approved a consent judgment on April 24, 2002, awarding Staton and the class judgment against KCC in the amount of $834,000, with an additional award of $50,000 for attorneys' fees. The consent judgment established liability and damages against KCC for the contracts entered into with its customers.[1]

Because Staton was unable to collect on the judgment, she brought an action in Pulaski County Circuit Court against American, who had posted four surety bonds, each in the amount of $50,000, on behalf of America$h's four Arkansas locations. American filed a motion for summary judgment, arguing that the bonds did not cover the loss sustained by Staton. The trial court granted the motion for summary judgment, finding that the "[j]udgment obtained by Emma Staton against Kentucky Cash Connection, LLC, was not a result of a risk covered by the bonds. Therefore there is no liability under the bonds." Staton appealed to this court, but we declined to reach the merits of her argument because she failed to exhaust her administrative remedies. *Staton I*, 362 Ark. 96, 207 S.W.3d 456.

Thereafter, Staton filed an action with the Board, requesting that it make a demand on the bonds posted by American on behalf of KCC. The Board held a hearing on December 7, 2005. On or about December 29, 2005, the Board issued its "Findings of Fact, Conclusions of Law and Order," finding in relevant part:

> The surety bond issued to America$h states that it shall pay "in accordance with the Rules and Regulations" promulgated under the Check-cashers[] Act.

> Section XXX of the Check-cashing Rules and Regulations contains the only reference to when the Board may make a demand on a check-casher's surety bond. Section XXX of the Rules and

---

[1] The consent judgment entered into by Staton and KCC reflects that Staton's complaint sought penalties for the usurious rates of interest charged, as well as a declaration that America$h's contracts with its customers be declared void and unenforceable. The consent judgment stated that Staton had obtained an order of summary judgment against America$h, and also declared that all outstanding customer contracts were void and unenforceable.

Regulations requires the Board to find the check-casher in violation of the Check-cashers[ ] Act or its Rules and Regulations before making a demand on the bond.

Plaintiff presented no evidence that America$h violated the Check-cashers[ ] Act or its Rules and Regulations.

Without evidence or testimony that America$h violated the Check-cashers[ ] Act, the Board cannot make a claim on its surety bond.

Staton filed a petition for judicial review in Pulaski County Circuit Court on January 3, 2006, pursuant to Ark. Code Ann. § 25-15-212 (Repl. 2002) of the Administrative Procedure Act (APA), arguing that the language of the bonds does not exclude coverage of the judgment she obtained. She further argued that it was for the trial court to interpret the language of the bonds and that they should be interpreted in favor of coverage. A hearing was held on September 11, 2006, at which counsel for Staton, the Board, and American each presented argument. At the conclusion of the hearing, the trial court orally ruled that it was affirming the findings of the Board, as there was substantial evidence to support its findings. A written order was subsequently entered on September 22, 2006, reflecting the court's oral ruling. A timely notice of appeal was filed and this appeal followed.

Judicial review of a decision by the Board is governed by the APA, codified at Ark. Code Ann. §§ 25-15-201 to -218 (Repl. 2002 & Supp. 2007). The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Collie v. Ark. State Med. Bd.*, 370 Ark. 180, 258 S.W.3d 367 (2007); *Batiste v. Ark. Dep't of Human Servs.*, 361 Ark. 46, 204 S.W.3d 521 (2005). Our review of administrative decisions is limited in scope. *Williams v. Ark. State Bd. of Physical Therapy*, 353 Ark. 778, 120 S.W.3d 581 (2003). When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Pine Bluff for Safe Disposal v. Ark. Pollution Control & Ecology Comm'n*, 354 Ark. 563, 127 S.W.3d 509 (2003).

As her first point on appeal, Staton argues that the Board erred in ruling that the bonds did not apply to her loss. Specifically, she argues that the bonds were intended to protect consumers such

as herself, particularly where one has obtained an outstanding, unsatisfied judgment in a court of law. Staton avers that the principal issue in this case is whether the Board correctly interpreted the insurance agreement that constitutes the surety bonds posted by American. KCC continued to charge usurious fees and American continued to provide bond coverage for KCC, even after this court struck down a statutory provision that allowed for the fees charged by companies such as KCC to be exempt from the definition of usury. According to Staton, American should now be liable for payment of the bonds in partial satisfaction of the consent judgment she obtained as a result of KCC's usurious practices, and the Board's finding to the contrary was arbitrary and capricious. Moreover, Staton argues that even if the bonds are limited to violations of the Act or the Board's rules and regulations, there was evidence demonstrating such a violation, specifically that KCC engaged in deceptive trade practices by charging usurious rates of interest and advising its customers that such fees were not interest.

The Board asserts that the surety bonds at issue are to be construed as if the terms of Regulation XXX were written into the bond, citing to *Farm Bureau Mutual Insurance Co. v. Wright*, 285 Ark. 228, 686 S.W.2d 778 (1985) (holding that statutory bonds are to be construed as if the terms of the statute were written into them). The Board further asserts that in considering Staton's request to call the bonds, it was required to follow the procedures set forth in its Regulation XXX. Thus, according to the Board, because this regulation requires the Board to make a finding that KCC violated the Check-cashers Act or a Board rule before making demand on a bond, its decision in this case was valid as there was no showing that KCC violated either Regulation XXX or any Board rule.

American avers that there was substantial evidence to support the Board's finding that it did not intend to insure against losses occasioned by violations of Arkansas's usury law. Reiterating the Board's position, American argues that the bonds were only intended to cover losses suffered as a result of a violation of the Check-cashers Act or the Board's rules and regulations.

Pursuant to Ark. Code Ann. § 23-52-107 (Repl. 2000), in order to be licensed as a check casher in Arkansas, an applicant must, among other things, post a $50,000 bond with the Department of Finance and Administration, with the bond payable to the State of Arkansas. Rule XXX of the Board's Rules and Regulations provides in pertinent part:

A) Each licensee is required to maintain a fifty thousand dollar ($50,000.00) surety bond for the use and benefit of the State of Arkansas and/or for any injured party and to ensure that the license[e] shall faithfully perform its duties and obligations pertaining to the business of check cashing and/or deferred presentment services.

B) If the Board determines, after due process, including proper notice and opportunity to be heard, that the licensee has violated an[y] provision of Act 1216 of 1999 or these Rules and Regulations, it shall collect from the required Surety Bond any monies due and payable to satisfy any loss or damages suffered by the State including civil penalties and/or any loss or damages suffered by any persons of the State. Payment on the bond shall be upon the written demand of the State of Arkansas State Board of Collection Agencies. The above notwithstanding, no monies may be collected from the bond and/or disbursed pending any administrative and/or judicial appeals.

C) In the event of any loss or damage suffered by any persons of the State, the [Board] shall proceed to disburse the funds it has collected from the Surety company in accordance with these Rules.

The remainder of Rule XXX provides for notification to all potential persons harmed by the unlawful actions of the payday lender and for hearings to be held on their claims before the Board determines how to disburse the bond amounts.

The bonds issued by American read as follows:

KNOW ALL PERSONS BY THESE PRESENTS:

That we, the above named Principal/Permittee, whose principal business and location addresses are set out above and the above named Surety are held firmly bound unto the State [of] Arkansas, in the sum of FIFTY THOUSAND DOLLARS and NO CENTS ($50,000.00) payable to the State of Arkansas for the use and benefit of the State and/or for any injured party. Lawful money of the United States of America, the payment of which well and truly to be made, we and each of us, bind ourselves, our heirs, executors, administrators, successors and assigns jointly, and severally, firmly by these presents.

THE CONDITIONS OF THE ABOVE OBLIGATIONS ARE SUCH THAT:

The above bound Principal is licensed or has applied for a license/permit to transact the business of check-cashing/deferred presentment option services, as provided by Act 1216 of 1999 (or as amended) known as the Act to License and Regulate Check-Cashing and Deferred Presentment Option Services. That the above bound Principal shall faithfully comply with and abide by each and every provision of said Act and all the rules and Regulations promulgated thereunder: shall faithfully perform the duties and obligations pertaining to the business of check-cashing/deferred presentment option services; shall satisfy any loss or damages suffered by the State and/or any person(s) of the State resulting from the Principal's violation of any provision of Act 1216 of 1999 (or as amended) or the Rules and Regulations [of the] State Board of Collection Agencies or any person(s) of this State suffering such loss or damages shall have the right to bring an action on this bond against the Principal or Surety.

That this bond, upon written demand by the State of Arkansas Board of Collection Agencies shall be paid and turned over to the State of Arkansas State Board of Collection Agencies in accordance with the Rules and Regulations promulgated thereunder.

Having set forth the Board's Regulation XXX and the language of the bonds themselves, we must now determine whether the Board properly held that those bonds were not intended to cover the loss suffered by Staton that resulted in her obtaining the consent judgment because of KCC's usurious practices. In other words, the narrow issue before us is whether the Board correctly ruled that it was unable to make demand on the bonds because Staton failed to present evidence of a violation by KCC of the Check-cashers Act or a Board rule or regulation. Because the finding was arbitrary and capricious and an abuse of discretion, we reverse.

From the inception of her suit, Staton has averred that she was damaged by KCC's practice of charging its customers usurious rates of interest, in violation of the laws of this state, in connection with its deferred-presentment transactions. Staton ultimately obtained a consent judgment as a result of KCC's usurious practices, and that consent judgment was presented to the Board. Staton's consent judgment was evidence that KCC violated not only article 19, section 13(a) of the Arkansas Constitution, which prohibits a business from charging usurious rates of interest,

but also the Board's own Regulation XXI,[2] which prohibits a check casher from engaging in deceptive trade practices. *See State v. R&A Investment Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999) (holding that the practice of charging usurious rates of interest was unconscionable and deceptive). As evidenced from the record, the Board considered the consent judgment when reviewing the evidence and noted that the consent judgment contained no finding that KCC violated the Act or a Board rule or regulation. To require the consent judgment to state such a specific finding is untenable, particularly when the Board is presumed to be aware of its own regulations, including Regulation XXI that prohibits check cashers from engaging in deceptive trade practices.[3] Accordingly, the Board's ruling that it could not make demand on the bonds because Staton presented no evidence of a violation of the Act or a Board rule or regulation was arbitrary, capricious, and an abuse of discretion.

We note that a similar result was reached by this court in the recent case of *Arkansas Bd. of Collection Agencies v. McGhee*, 372 Ark. 136, 271 S.W.3d 512 (2008). There, this court held that a surety bond's coverage did apply to the appellant's loss and resulting consent judgment. *McGhee* is distinguishable in that the bond at issue there provided that coverage extended to any loss resulting from a violation of the Act, Board rule or regulation, or a violation of the *"applicable laws of the State [of] Arkansas." Id.* at 143, 271 S.W.3d at 517. Thus, this court determined that the consent judgment obtained by McGhee was evidence that the appellee violated the laws of this state by charging usurious rates of interest. While this is a notable distinction, it is not determinative of the outcome in the present case, because here there was evidence,

---

[2] Although Regulation XXI is not in the record, this court may take judicial notice of any published agency regulation. *See Ark. Alcoholic Beverage Control Bd. v. Muncrief*, 308 Ark. 373, 825 S.W.2d 816 (1992).

[3] American argues that the issue of a violation of Regulation XXI is raised by Staton for the first time on appeal. American's argument in this regard is a red herring, in that Staton's argument throughout these proceedings has been that the bonds, regardless of their language, are applicable to her loss. It was the Board who narrowed the focus of this case by ruling that there was no evidence of a violation of a regulation. Moreover, after the Board ruled as it did, Staton addressed the specific argument regarding the applicability of Rule XXI in her brief to the circuit court seeking judicial review under the APA.

namely the consent judgment, that KCC violated a Board regulation, thus triggering the bonds applicability to Staton's loss.

 Finally, we note that American raises the alternative argument that if this court determines that the language of the bonds are applicable to Staton's loss, it should not be required to pay on those bonds, as the bonds were revoked effective October 1, 2001, and Staton did not obtain her consent judgment until April, 24, 2002. American never raised the issue of the bonds' effective date before the Board. Likewise, American never raised the issue that the only bond that should be at issue is the one posted for the Asher Avenue location. This court has repeatedly held that defenses must be presented first to the administrative agency before they can be presented to an appellate court for consideration. *See McGhee*, 372 Ark. 136, 271 S.W.3d 512.

Reversed and dismissed.

Special Justice LONNIE TURNER joins.

IMBER, J., not participating.