2011 Ark. 258

**MOUNTAIN PURE, LLC, Appellant,**

v.

**LITTLE ROCK WASTEWATER UTILITY, Appellee.**

**No. 11–17.**

Supreme Court of Arkansas.

June 16, 2011.

Davidson Law Firm, LTD., by: Charles Darwin "Skip" Davidson and J. Paul Davidson, Little Rock, for appellant.

Mitchell, Williams, Selig, Gates & Woodyard, PLLC, by: Allan Gates and Marcella J. Taylor, Little Rock, for appellee.

JIM GUNTER, Justice.

Mountain Pure, LLC, appeals the circuit court's order that affirmed the administrative decision of Little Rock Wastewater (LRW), which found that Mountain Pure had violated its compliance order, its discharge permit, and City of Little Rock Sewer Rate Ordinance No. 19,647. On appeal, Mountain Pure argues that the administrative decision was arbitrary and capricious and that it was not supported by substantial evidence. We have assumed this case, as it involves an issue needing clarification and the interpretation of a rule; therefore, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(b)(5) and (6) (2011). We affirm.

Until 2000, Mountain Pure and Gold Star Dairy shared a common outfall to the sanitary sewer. However, after a separation in the legal ownership of the two facilities, LRW required a separation of the outfalls so that each facility could be accurately billed for surcharge parameters. Gold Star Dairy retained the original discharge line, and, pursuant to a compliance order dated August 23, 2001, Mountain Pure was required to install a new representative sampling point and a wastewater-flow-measurement system. The purpose of this system was to allow representative monitoring to occur using flow-proportional sampling and to allow Mountain Pure to be charged sewer fees based on what was discharged to the sanitary sewer.

A sewer meter and sampling point was installed by Mountain Pure, but LRW determined that it had been improperly installed, and a letter was sent to Mountain Pure on September 20, 2002, requiring corrective measures and informing Mountain Pure that until the meter was fixed, LRW would continue to use the city water meter for billing. In 2004, Mountain Pure submitted initial plans for a pretreatment system to LRW for approval; however, Mountain Pure eventually dropped all plans to install a pretreatment system for pH and flow monitoring.

On May 4, 2007, Mountain Pure sent a letter to LRW acknowledging that it had previously been advised to install a meter and asking whether, in light of the expense required to install such a meter, it was possible to arrive at some other method of estimating the amount of water that it returns to the sewer system and basing its

billing accordingly. On May 17, 2007, LRW responded by explaining that it was obligated to follow Little Rock Ordinance No. 19,647, § 1(d), which states in part:

In the case of customers whose water use is such that an appreciable quantity does not reach the sewer system, then the customer may be permitted by the Utility, upon written request to the Utility, at the customer's expense, to have a meter installed for the purpose of determining the amount of such quantity not reaching the sewer system, provided, however, the meter shall be inspected and approved by the Utility.... Upon written application to the Sewer Committee, if a customer can show by $_{3}$such an approved and inspected meter than an appreciable quantity of the water used by the customer did not reach the sewer system, then the computation upon which that customer's sewage charge is based shall be adjusted and determined in accordance with the measurement as indicated by the meter, but the burden of showing that an appreciable quantity of water usage during a billing cycle does not reach the sewer system shall be upon the customer.

LRW explained that only two methods for making the flow measurements were acceptable: (1) a LRW-approved sewer meter that is installed to accurately measure flow prior to entering the LRW sewer main, or (2) diversion meter(s) that are appropriately placed in the facility to segregate water that goes into product versus water that is used to clean and sanitize process equipment and floors.

On July 30, 2008, Mountain Pure notified LRW that it was requesting a significant adjustment of its rates and a refund due to overcharging. On January 8, 2009, Mountain Pure claimed a credit of $289,576 for wastewater fees paid for water that was not discharged into the city sewer system. LRW responded on February 5, 2009, again citing Mountain Pure's noncompliance with Ordinance No. 19,647, § 1(d) and explaining that Mountain Pure must install either a sewer meter or a diversion meter to make the appropriate flow measurements. LRW also advised Mountain Pure that due to its violation of the ordinances, the compliance order, and its discharge permit, legal action appeared to be the only recourse. LRW advised Mountain Pure that unless it was in compliance by March 1, 2009, appropriate legal action would be taken.

Subsequently, on March 18, 2009, the Little Rock Sanitary Sewer Committee passed $_{4}$a resolution authorizing LRW to issue a show cause order to Mountain Pure. A show-cause hearing was held on May 13, 2009, and after hearing testimony, the LRW hearing officer issued an order on July 24, 2009. In its order, the hearing officer found that Mountain Pure had violated its permit, compliance order, and applicable ordinances by:

a. Failure to comply with the LRW compliance order dated August 23, 2001, by not installing a sewer meter which was able to be properly calibrated, e.g., to perform a zero calibration, preventing the meter from accurately measuring the flow, and then failing to take corrective measures despite LRW's request to do so, and; thereafter

b. Violating its industrial wastewater discharge permit S–65, Part II, Section C by dropping all plans to install or correct the flow monitoring system when the permit required such a meter to be calibrated and maintained to insure accuracy in accordance with the permit; and

c. Violating both [sic] the Sewer Rate Ordinance No. 19,647 by failing to pay sewer charges, which is a basis

for permit revocation pursuant to Pretreatment Ordinance No. 19,895, Section 5.5(I).

The order directed that Mountain Pure comply with the compliance order, its discharge permit, and the applicable ordinances on or before August 24, 2009.

Mountain Pure appealed this decision to the Pulaski County Circuit Court by filing a complaint on August 21, 2009. In the complaint, Mountain Pure asserted that it was seeking "judicial review of a final order entered by LRWU pursuant to Ark. Code Ann. § 25–12–212 [sic] and Little Rock Code § 35–303(C)." The complaint sought a review of LRW's actions and decision, which contained "irregularities" according to Mountain Pure; the issuance of an injunction to stay enforcement of the administrative decision; and a credit pursuant to Ordinance No. 19,647. A hearing was held in the circuit court on July 9, 2010, and the court issued an order on September 27, 2010, affirming the administrative decision. Mountain Pure filed a notice of appeal from this order on October 8, 2010.

Prior to discussing the merits of this appeal, we must first address a jurisdictional issue that has been raised by LRW. In its response brief, LRW asserts that because there is no statute that addresses how a party may take an appeal from an administrative determination by a municipal wastewater utility, Arkansas District Court Rule 9 governs appellant's appeal. In support of this assertion, LRW cites *Clark v. Pine Bluff Civil Service Commission*, 353 Ark. 810, 120 S.W.3d 541 (2003), which held that Rule 9 governed perfecting an appeal from a civil service commission and noted that Rule 9 has been used to govern the procedure for appeals from municipal and county boards and commissions. LRW argues that, pursuant to Rule 9(f)(2)(A), appellant was required to file a notice of appeal with the clerk of the circuit court having jurisdiction within thirty days from the date of the administrative decision but failed to do so. Instead, appellant filed a complaint seeking judicial review pursuant to the Administrative Procedure Act (APA). LRW acknowledges that neither party raised any question regarding Rule 9 or the court's jurisdiction below and that the court ruled on appellant's claim on the merits.

In reply, Mountain Pure argues that LRW has wrongly concluded that there is no statute that addresses this appeal. Mountain Pure asserts that § 25–15–212 and § 35–303(C) of the Little Rock Code clearly apply in the present case.[1] Mountain Pure claims that it is "undisputed" that LRW is an administrative agency, thus the APA applies. Mountain Pure also cites several cases that involve municipal entities and claims that the appellate court had jurisdiction in those cases under the APA.

We agree with LRW that this appeal is not governed by the APA. The APA defines an "agency" as "each board, commission, department, officer, or other authority of the government of the State of Arkansas, whether or not within, or subject to review by, another agency, except the General Assembly, the courts, and Governor." LRW is clearly not an agency of the State of Arkansas but instead is a municipal body governed by the Little Rock Sanitary Sewer Committee, which is comprised of citizens appointed by the Little Rock City Board of Directors. Thus,

1. Section 35–303(C) of the Little Rock Code provides in part: "Any decision made as a consequence of any hearing held pursuant to this article shall be subject to review by appeal to the Circuit Court of Pulaski County, in accordance with the law of Arkansas."

we find that Mountain Pure's appeal is governed by District Court Rule 9 (2009).

■ Under Rule 9, a party wishing to appeal a final administrative decision must file a notice of appeal with the clerk of the circuit court having jurisdiction of the matter within thirty days from the date of the administrative decision. The notice of appeal shall describe the final administrative decision being appealed and specify the date of that decision. In this case, Mountain Pure did not file a "notice of appeal" but instead filed a complaint and alleged that it was seeking judicial review of a final administrative order pursuant to the APA. The ⌐7complaint did, however, describe the final administrative decision and specify the date of that decision.

■ This court has been abundantly clear that compliance with Rule 9 must be strict; substantial compliance will not suffice. *Johnson v. Dawson,* 2010 Ark. 308, 365 S.W.3d 913. However, this court has also held that pleadings are to be liberally construed so as to do substantial justice and to give effect to the substance of the pleading rather than the form. *Wright v. City of Little Rock,* 366 Ark. 96, 233 S.W.3d 644 (2006). In *Wright,* this court held that an administrative appeal had been properly perfected even though the parties had filed a pleading captioned "complaint for declaratory judgment," because "[t]he relief sought was the appeal of the decision of the Board, and that was clear from the pleading." *Id.* at 100, 233 S.W.3d at 647. Likewise, in the present case, we hold that the complaint filed by Mountain Pure fulfilled the requirements of the notice of appeal required under Rule 9 because it was clear it was pursuing an appeal of the decision of LRW. Thus, we find that this court has jurisdiction to hear the present appeal.

■ While this case involves an appeal of a decision made by a municipal body, which we have determined is governed by District Court Rule 9, the decision appealed is administrative in nature, therefore we will review the decision using the same standard of review for appeals of administrative agency decisions. Review of administrative agency decisions, by both the circuit court and appellate court, is limited in scope. *Nash v. Ark. Elevator Safety Bd.,* 370 Ark. 345, 259 S.W.3d 421 (2007). The standard of review to be used by both the circuit court and ⌐8the appellate court is whether there is substantial evidence to support the agency's findings. *Id.* The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Staton v. Ark. State Bd. of Collection Agencies,* 372 Ark. 387, 277 S.W.3d 190 (2008). When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.* We review issues of statutory interpretation de novo, *City of Ft. Smith v. Carter,* 372 Ark. 93, 270 S.W.3d 822 (2008); however, the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.,* 351 Ark. 13, 89 S.W.3d 884 (2002). We apply the same statutory-construction rules to ordinances as we do to statutes. *Stricklin v. Hays,* 332 Ark. 270, 965 S.W.2d 103 (1998).

For its first point on appeal, Mountain Pure asserts that the administrative decision below ignored the plain and unambig-

uous language of § 1(f)(6) of Ordinance No. 19,647 and instead relied exclusively on § 1(d). Section 1(d), quoted previously, provides that those customers whose water use is such that an appreciable quantity does not reach the sewer system may have a meter installed for the purpose of determining the amount of such quantity not reaching the sewer system. Section 1(f)(6) provides:

> Any customer who feels that his charge is unjust and inequitable may make written application to the Utility requesting a review of his charge. Said written request shall, when necessary, show the actual or estimated average flow and/or strength of his wastewater in comparison with the values upon which the charge is based, including how the measurements or estimates were made. Review of the request shall be made by the Utility and if substantiated, the charges for that customer shall be recomputed based on the revised flow and/or strength data and the new charges shall be applicable to the next billing cycle/period.

Mountain Pure stresses that there is no requirement in § 1(f)(6) that the customer install an approved meter. According to Mountain Pure, § 1(d) provides customers an alternative method of computing future sewer bills, but it is § 1(f)(6) that provides a remedy for past overcharges, which is what Mountain Pure is seeking in the present case. In support of this argument, Mountain Pure cites *Chelsea Piers Management, Inc. v. Chapin*, 7 A.D.3d 389, 777 N.Y.S.2d 97 (N.Y.App.Div.2004), in which the appellate court reinstated a credit given to a customer who had been charged sewer rents when the wastewater from the customer's property was not being emptied into the city's sewers. Mountain Pure also cites *Washington Realty Co. v. Municipality of Bethel Park*, 937 A.2d 1146 (Pa.Commw.Ct.2008), for the proposition that sewer rental charges must bear a reasonable relation to the value of the service rendered either as actually consumed or as readily available for use.

Mountain Pure argues that as early as 2007 it had contacted LRW about its overcharges and requested a recalculation of its bill. But, despite numerous communications with LRW, Mountain Pure's requests were denied. It asserts that the administrative decision was arbitrary and capricious because it failed to recognize that § 1(d) and § 1(f)(6) are designed to address different situations and, more importantly, the hearing officer failed to analyze or apply § 1(f)(6) in the administrative order. Mountain Pure argues that under § 1(f)(6), it only had to show that the past charges were "unjust and inequitable," which it claims that it did, but the hearing officer misinterpreted the ordinance and held that Mountain Pure had to install a meter in order to receive any type of credit.

In response, LRW argues that Mountain Pure's "plain meaning" argument concerning § 1(f)(6) ignores the specific application of § 1(d) to customers like Mountain Pure and cites this court's basic tenet of law that a general statute must yield when there is a specific statute addressing a particular subject matter. *E.g., Wal–Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.*, 374 Ark. 489, 288 S.W.3d 627 (2008); *Ozark Gas Pipeline Corp. v. Ark. Public Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). LRW also asserts that Mountain Pure failed to raise this particular argument below, but even if it was raised, the language of § 1(f)(6) clearly shows that it does not just apply to past charges. LRW contends that the administrative decision expressly considered the ordinance as a whole and found that the specific provisions of § 1(d) controlled, not the general provisions of § 1(f)(6). In reply,

Mountain Pure again asserts that the hearing officer committed reversible error when it construed the ordinance incorrectly by ignoring § 1(f)(6). Mountain Pure argues that there is "simply no record or proof the administrative judge even considered 1(f)(6)."

We hold that Mountain Pure has failed to establish that LRW acted arbitrarily and capriciously in applying § 1(d) to the case at bar. First, while Mountain Pure did raise the applicability of § 1(f)(6) at the administrative hearing, it does not appear that it made the specific argument of "past charges vs. future charges" that it is now asserting. It is the appellant's obligation to raise an issue first to the administrative agency and obtain a ruling thereupon in order to preserve an argument for appeal. *Louisiana v. Joint Pipeline Grp.*, 2010 Ark. 374, 373 S.W.3d 292. We also disagree with Mountain Pure's characterization of the agency decision as "ignoring" § 1(f)(6). While it is true that § 1(f)(6) is not mentioned in the order, the hearing officer heard testimony concerning its applicability and ultimately decided that § 1(d) was the applicable provision. We also note that if Mountain Pure desired a specific ruling on the applicability of § 1(f)(6), it could have asked for clarification of the agency's order, but it failed to do so.

For its second point on appeal, Mountain Pure argues that the administrative decision was not supported by substantial evidence. Mountain Pure asserts that it was the only party that submitted any substantive evidence of the "unjust and inequitable" charges and contends that it demonstrated that it had been overcharged in the amount of $289,576. This figure was testified to by Mark Watkins, a certified public accountant, who prepared a report providing an estimate of the amount of water that was purchased but did not reach LRW's wastewater system. Mountain Pure contends that LRW failed to offer any evidence that Mountain Pure was not overcharged.

In response, LRW notes that the hearing officer made a specific finding with regard to Watkins's testimony and found as follows:

> Although Respondent offered testimony of Mark Watkins, CPA, at the hearing, his testimony and calculations for a credit failed to establish compliance with CLR Ordinance No. 19,647, requiring a meter to be installed for the purpose of determining the amount of such quantity not reaching the sewer system. Mr. Watkins did not conduct sufficient independent review of the relevant facts and circumstances to provide a basis for giving competent or material testimony, and he did not audit or test the summary information that Mountain Pure supplied to him for purposes of giving his testimony. As a consequence, the testimony by Mr. Watkins is not competent or material to establish that Respondent is entitled to any credit on sewer charges owed.

LRW argues that Mountain Pure has failed to challenge this finding by the administrative hearing officer. LRW also argues that Mountain Pure failed to meet the requirement in § 1(f)(6) that it establish the actual or estimated flow and strength of the sewage that it discharged to LRW's system during the period in question. LRW also contends that it submitted substantial and uncontested evidence that Mountain Pure was required to install a meter but failed to do so.

Finally, LRW also asserts that Mountain Pure's argument fails to acknowledge that the administrative order not only found that § 1(d) applied, but also found that both the 2001 compliance order and the discharge permit required Mountain

Pure to install and maintain the flow-measurement meter. LRW argues that these findings constitute an independent basis for upholding the administrative order, regardless of how the ordinance is construed, and that Mountain Pure has failed to challenge these findings.

We affirm on this point. It appears that Mountain Pure has failed to recognize the basis of the agency's order; it asserts that LRW failed to offer any evidence that Mountain Pure was not overcharged, but whether Mountain Pure was overcharged has never really been in contention. The gravamen of the order is that Mountain Pure was required to install a flow-measurement[13] meter and, had it done so, it could have had its charges adjusted accordingly. Also, as LRW suggests in its response, it seems that Mountain Pure's argument ignores both the specific finding with regard to the testimony of Mark Watkins and the other bases for the order, namely the failure to meet the requirements of the compliance order and the discharge permit. For these reasons, we find that the agency's decision is supported by substantial evidence.

For its final point on appeal, Mountain Pure asserts that the circuit court erred when it refused to admit a chart prepared by LRW that summarized data measured by a meter that was installed after the show-cause order had been entered. Mountain Pure argued at the circuit court level that the chart confirmed its contention that a substantial amount of the water that it purchased from the city was used in its products and did not reach the wastewater system. The court, however, refused to admit the chart, as the court was limited to the record that was before the agency.[2]

Mountain Pure argues on appeal that the failure to admit the chart is grounds for reversal of either the agency decision or the circuit court. In response, LRW argues that the chart was not part of the record before the administrative hearing officer and was prepared purely for settlement purposes, thus it was inadmissible under Ark. R. Evid. 408, which states:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to [14]compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

In reply, Mountain Pure argues that the chart was offered not to prove liability, but to confirm its amount of damages, so the chart was not inadmissible under Rule 408. Mountain Pure also cites § 25–15–212(f), which allows a party to seek permission from the court to present additional evidence to the agency if the court finds that the evidence is material and there was good reason it was not presented in the proceeding before the agency.

We find that Mountain Pure's argument on this point is moot. As a general rule, the appellate courts of this state will not review issues that are moot.

---

2. In its order, the court cited § 25–15–212(e), but it is actually subsection (g) that states that the review conducted by the court shall be confined to the record except in cases of alleged irregularities in procedure, in which case testimony may be taken before the court.

*Cotten v. Fooks,* 346 Ark. 130, 55 S.W.3d 290 (2001). To do so would be to render advisory opinions, which this court will not do. *Id.* We have generally held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id.* In other words, a moot case presents no justiciable issue for determination by the court. *Shipp v. Franklin,* 370 Ark. 262, 258 S.W.3d 744 (2007). In this case, it is the agency's decision, not the decision of the circuit court, that we are reviewing, so an evidentiary decision made by the circuit court presents no justiciable issue for determination by this court. We also reiterate that whether Mountain Pure has paid for wastewater services that it did not actually use is not really at issue; the crux of this case is Mountain Pure's ability to obtain a credit for its overpayment when it was aware that it was under an obligation to install a meter to allow LRW to measure the correct amount to be billed. Thus, we find no basis for reversal on this point.

Affirmed.