Allen C. Meadors, Ph.D., FACHE President The University of Central Arkansas
201 Donaghey Avenue Conway, Arkansas 72035-5003
Dear Dr. Meadors:
This is my opinion on your questions about A.C.A. § 19-4-1613 (Repl. 2007).[1] You ask whether the term "state agency," as used in subsection (a) of the statute, includes institutions of higher education, and whether the statute applies to non-classified employees.
Your request states the following background information: *Page 2 
 Recently, a non-classified employee left the employment of the University of Central Arkansas. The week following such employee's termination of employment with our university, the employee began employment with another institution of higher education in Arkansas. The former employee has requested a lump-sum payment of his unused vacation pay. The reason for this opinion request is to determine whether or not it is appropriate under Arkansas law to pay such vacation pay to the non-classified employee if he then becomes an employee of another institution of higher education.
RESPONSE
In my opinion, state-supported institutions of higher education are state agencies subject to the statute, which applies to non-classified employees. With respect to your ultimate question, and assuming a lump-sum payment for unused annual leave would be due under UCA policy absent the former employee's return to state employment, it is my opinion that UCA must make such a payment in this instance. It is also my opinion, however, that UCA is obligated to pay only the amount that corresponds to the number of days that intervened between the two state agency jobs.
Question 1 — Does the term "state agency," as usedin A.C.A. § 19-4-1613(a), include institutions of highereducation?
The statute applies only when "a person ceases to be an active employee of a state agency. . . ." A.C.A. § 19-4-1613(a).[2] For the reasons described below, I am of the opinion that a state-supported institution of higher education is a state agency for purposes of the statute. *Page 3 
The section at issue originated in Act 980 of 1975, § 2, and was enacted explicitly as an amendment of Act 876 of 1973, the General Accounting and Budgetary Procedures Law ("GABPL"). The GABPL, generally codified as amended, with exceptions, at A.C.A. §§ 19-4-101 to-2004 (Repl. 2007 and Supp. 2009), provides that it is the State's policy "to maintain the State and all of its agencies, boards, commissions, departments and institutions on a sound financial basis" and that the GABPL's general provisions are enacted to promote that and related policies. Act 876, § 2(A) (codified at A.C.A. § 19-4-102(a)(1)(A) (Repl. 2007)) (emphases added). The GABPL further provides that "State agencies, departments,institutions, boards, and commissions [are] referred to [in the GABPL] as agencies." Act 876, § 2(A)(3) (not codified) (emphases added).
Arkansas courts construe unambiguous statutes according to the plain meanings of the words used. E.g., Brown v. Kelton,2011 Ark. 93, ___ S.W.3d ___, 2011 WL 729057. The plain meanings of the GABPL's words quoted above indicate that state-supported institutions of higher education are included in the term "state agencies" as used in the GABPL in general and in A.C.A. § 19-4-1613(a) in particular.
"It is also the purpose of [the GABPL] to establish acomprehensive system of State budgeting and financial management which will further the capacity of the General Assembly to plan and finance the services which it determines the State should provide for its citizens. . . ." Act 876, § 2(B) (codified at A.C.A. § 19-4-102(b)) (emphasis added). A budgeting and management system that did not include state-supported institutions of higher education could hardly be truly comprehensive.
Moreover, the GABPL implicitly recognizes that state-supported institutions of higher education are "state agencies" for GABPL purposes by explicitly exempting them from some requirements that would otherwise apply and by otherwise treating them as state agencies for purposes of the GABPL. For example, "[e]ach State agency, other than . . . the State supported institutions of higher education . . ., shall prepare an Annual Operations Plan. . . ." Act 876, § 9(B) (codified as amended at A.C.A. § 19-4-607(a) (Supp. 2009)); seealso, e.g., Act 876, § 12 (codified as amended at A.C.A. § 19-4-521(2)(D) (Repl. 2007)) (defining "state employee" as including employee of institution of higher education); § 12 (A.C.A. § 19-4-522(a) (Repl. 2007)) (including institutions of *Page 4 
higher education in list of state entities subject to appropriations classification); § 11(B) (A.C.A. § 19-4-604 (Repl. 2007)) (addressing general revenues to be distributed to institutions of higher education); § 10 (A.C.A. § 19-4-609(b) (Repl. 2007)) (providing for monthly productivity reporting for entities including institutions of higher education); § 16 (A.C.A. § 19-4-903(a)(2) (Repl. 2007)) (excepting employees of institutions of higher education from otherwise-applicable expense approval requirement); § 16 (A.C.A. § 19-4-904(d) (Repl. 2007)) (prescribing special travel expense rules for teams representing institutions of higher education); § 22 (A.C.A. § 19-4-1402(b) (Supp. 2009)) (exempting institutions of higher education from otherwise-applicable construction contract filing requirement); § 22 (A.C.A. § 19-4-1405(c)(2)(B) and (e)(1)(B) (Supp. 2009)) (establishing special bonds and bids rules for construction projects of institutions of higher education); § 23 (A.C.A. § 19-4-1604(b)(1) (Repl. 2007)) (establishing exception from prohibition on receiving salaries from two state agencies for state agency employee teaching as adjunct at institution of higher education; expressly refers to institution of higher education as state agency); § 21 (A.C.A. § 19-4-1901 (Repl. 2007)) (exempting institutions of higher education from most of otherwise-applicable subchapter).
If state-supported institutions of higher education were not state agencies for purposes of the GABPL, there would be no need to exempt them from requirements that, by their explicit terms, apply to state agencies only, and otherwise to treat them as state agencies.
It follows from all of the foregoing, and it is my opinion, that the term "state agencies" in A.C.A. § 19-4-1613(a) includes state-supported institutions of higher education.
Question 2 — Does A.C.A. § 19-4-1613 apply to bothclassified and non-classified employees?
By its terms, the statute applies to any "person [who] ceases to be an active employee of a state agency." A.C.A. § 19-4-1613(a). It makes no reference to the person's status under the Uniform Classification and Compensation Act, A.C.A. §§ 21-5-201 to-225 (Repl. 2004, Supp. 2009),19-4-1606 (Repl. 2007) (amendments byAct 1017 of 2011 effective July 1, 2011) ("UCCA"), pursuant to which state employees may be regarded as classified or non-classified. Non- *Page 5 
classified employees of state-supported institutions of higher education are not subject to the UCCA. A.C.A. § 21-5-203(1), (9)(B) (Supp. 2009); accord
Op. Att'y Gen. 2010-089.
This office has opined on at least two occasions that a statute containing no express limitation to classified employees applies to both classified and non-classified employees. Op. Att'y Gen. 2005-211 (act applying to "employees of [a] two-year college" applies "to all employees of two-year colleges, regardless of whether they [are] classified or non-classified"); 2000-033 (workers' compensation law's application to "[a]ny officer or employee of any state . . . college, university or community college" means that "[c]overage consequently extends to both classified and nonclassified employees").
The GABPL refers to the UCCA several times. A.C.A. §§ 19-4-1209 (Repl. 2007) (requiring compliance with UCCA in disbursing public funds);-1601(b)(1) (Repl. 2007) (stating that UCCA governs specified matters unless otherwise provided in appropriation act);-1601(b)(3)(B) (cross-reference);-1606(a) (cross-reference). The references demonstrate that, in drafting the GABPL, the legislature was fully aware of the UCCA and easily could have limited the applicability of the section at issue to classified employees if it had so desired.
For the reasons stated above, it is my opinion that A.C.A. § 19-4-1613 applies to non-classified employees.
Your request indicates that your ultimate inquiry is "whether or not it is appropriate under Arkansas law to pay such vacation pay to the non-classified employee if he then becomes an employee of another institution of higher education." Your request implies that affirmative answers to your two express questions, which are in fact answered in the affirmative above, will compel the conclusion that UCA need not make any lump-sum payment at all in this instance. I disagree, and explain my rationale and conclusion below.
Fundamentally, subsection (a) of the statute provides in relevant part that a state agency may and should pay whatever lump sum is due[3] a departing employee for *Page 6 
unused annual leave, even though the payment might otherwise be deemed not to comply with a law requiring state employees' salaries to be spread evenly over time. A.C.A. § 19-4-1613(a) (statute described; see note 1); see
A.C.A. § 19-4-1607 (Repl. 2007) (statute referred to). The rule is simple and straightforward: if the payment is due, it may and should be made, notwithstanding that the statute requiring state employees' salaries to be spread evenly over time could be read to prohibit it.
Subsection (b) of the statute provides that an employee who has received such a payment "shall [not] return to state employment until the number of days for which he or she received additional compensation has expired." A.C.A. § 19-4-1613(b) (see note 1).
The statute simply does not address the situation you describe, where no payment has been made under subsection (a) but the former employee has become employed by another state agency sooner than would have been permissible under subsection (b) had he received the payment.
The statute does, however, suggest a result. Subsection (d) provides that an employee who receives a lump-sum payment forsick leave and returns to state employment "shall not be required to wait until the expiration of the number of days for which he or she received additional compensation before returning to state employment or to repay the amount of the compensation." A.C.A. § 19-4-1613(d) (emphasis added). Subsection (d) was added to the statute in 2005 by an act that stated as its purpose "to allow retention" of lump-sum payments for unused sick leave.Act 1188 of 2005, title and subtitle.
In explicitly granting an exemption from repayment for sickleave payments, subsection (d) amounts to clear legislative recognition that repayment was (and still is, with respect toannual leave) an accepted way to address the situation *Page 7 
where a lump-sum payment had been made under the statute but the person returned to state employment sooner than permitted under subsection (b).
The statutory language ("repay the amount of the compensation") could be read to require repayment of the entire lump sum if the person returns to state employment even one day sooner than permitted. But the Department of Finance and Administration's Office of Personnel Management has published an interpretation of the statute that permits the person to "reimburse the agency which made the lump sum payment for the number of days paid but not yet expired and return to state employment." OPM Policy 20.28. Current OPM policy, in other words, adopts a pro rata approach and requires repayment only for the number of days by which the person returns to state employment too soon, not repayment of the entire amount regardless of the magnitude of the person's subsection (b) violation.
"[T]he interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong."Mountain Pure, LLC v. Little Rock Wastewater Utility,2011 Ark. 258, at 8, ___ S.W.3d ___, 2011 WL 2410598. In my view, the OPM interpretation is reasonable and not clearly wrong.
Both the statute and the OPM policy speak in terms of repayment. Accordingly, neither expressly addresses the facts of this situation, where repayment is not possible because no payment has been made in the first place. I believe, however, that logic and fairness dictate that the rule be adapted to this situation by UCA's paying the former employee an amount determined by subtracting from the full amount otherwise due an amount related to the number of days by which he returned to state employment sooner than permitted by subsection (b). The economic result of such a net payment would be the same as if UCA had originally made payment in full and the former employee had later repaid the amount described in OPM's policy.
It is my opinion, then, that UCA must make a lump-sum payment to its former employee for annual leave in this instance, but that it is obligated to pay only the amount that corresponds to the number of days that intervened between the two state agency jobs. *Page 8 
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JMB/cyh
[1] The statute provides:
 19-4-1613. Lump-sum terminal pay.
 (a) Upon termination, resignation, retirement, death, or other action by which a person ceases to be an active employee of a state agency, the amount due the employee or his or her estate, including any accrued unpaid annual or holiday leave which is due in accordance with the policies of the state agency and lump-sum payments of sick leave balances upon retirement as provided by law, may, and should, be included in the final pay to the employee or his or her estate for the employee's active work, even though the final payment of salary or wages may exceed one twenty-sixth (1/26) or other fractional amount based upon days, weeks, or months of the employee's annual authorized compensation at the date active employment ceases.
 (b) No employee receiving the additional compensation shall return to state employment until the number of days for which he or she received additional compensation has expired.
 (c) Payment of the additional compensation shall not be considered as exceeding the maximum for a position so authorized.
 (d) If an employee receives compensation for unused sick leave at retirement pursuant to § 21-4-501 and returns to state employment, the employee shall not be required to wait until the expiration of the number of days for which he or she received additional compensation before returning to state employment or to repay the amount of the compensation.
[2] The statute originally referred to an event "by which a person ceases to be an active employee of the State. . . ."Act 980 of 1975, § 2. It was amended in 2001 to substitute "a state agency" for "the State." Act 1453 of 2001, § 46. This change does not appear to have been the principal focus of the amending act: in the version of Act 1453 available on the General Assembly's web site, this change is not shown by stricken and underlined language, while another change to the section not relevant to this opinion is so shown. Id., available at
http://www.arkleg.state.ar.us/assembly/2001/R/Acts/Act1453.pdf. In any event, my opinion on your question would be the same under either version.
[3] A statute that generally requires lump-sum payments for departing state employees' unused annual leave does not apply to "administrative, academic, or other nonclassified employees of the state-supported institutions of higher learning. . . ." A.C.A. §§ 21-4-205(a)(1) (Supp. 2009) (lump-sum payment requirement),21-4-203(11)(E) (Repl. 2004) (exempting described employees from lump-sum payment requirement and other provisions of subchapter). It does not appear, accordingly, that a lump-sum payment is due bylaw in this instance. But the statute at issue in this opinion addresses amounts that are due a departing state employee whether they are due by law or under agency policy. A.C.A. § 19-4-1613(a). Your opinion request clearly implies that UCA would make the lump-sum payment in question absent the former employee's return to state employment. I accordingly assume for purposes of this opinion that the payment would be due under UCA policy absent the former employee's return to state employment.
 *Page 1