
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-293

| | |
|---|---|
| BETTYE DUNN-WRIGHT<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS STATE BOARD OF EDUCATION<br><br>APPELLEE | Opinion Delivered   MARCH 4, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION<br>[NO. 60CV-12-3315]<br><br>HONORABLE JAY MOODY, JUDGE<br><br>AFFIRMED |

### KENNETH S. HIXSON, Judge

This matter involving appellant Dr. Bettye Dunn-Wright and appellee Arkansas State Board of Education (hereinafter referred to as the "State Board") comes before this court for the third time. It arose from the State Board's order, entered on June 11, 2012, which removed Dr. Dunn-Wright from her position as superintendent of the Dollarway School District (hereinafter referred to as the "School District"). The State Board's removal of Dr. Dunn-Wright resulted from its decision to reconstitute the leadership of the School District based on the School District's failure to meet standards for accreditation for two consecutive school years. Dr. Dunn-Wright timely filed a petition for review in Pulaski County Circuit Court, raising multiple issues challenging the State Board's decision.

In the review before the circuit court, the State Board filed a motion to dismiss Dr. Dunn-Wright's petition for judicial review. On January 24, 2013, the circuit court entered an order granting the State Board's motion with respect to some of Dr. Dunn-

Wright's claims, including her constitutional claims and her assertion that the State Board's decision was inconsistent with its prior decisions in similar cases. The circuit court dismissed the above claims on the grounds that they had not been raised before the State Board. However, the circuit court ordered the parties to brief the remaining issues, which included a challenge to the sufficiency of the evidence supporting the State Board's decision that the School District had violated accreditation standards for the 2011–12 school year. The case would then be set for oral argument. Dr. Dunn-Wright appealed from the January 24, 2013 order of partial dismissal, but we dismissed that appeal on June 26, 2013, because some of her claims remained unresolved and there was no final order from which to appeal.

After each party submitted trial briefs on the remaining issues and oral argument was held, the circuit court entered an order affirming the State Board's decision to reconstitute the School District and remove Dr. Dunn-Wright as superintendent. Dr. Dunn-Wright subsequently filed her second appeal with this court, appealing from both the circuit court's January 24, 2013 order of partial dismissal and the December 31, 2013 order affirming the State Board's decision. We ordered rebriefing because the addendum was deficient. *See Dunn-Wright v. Ark. State Bd. of Educ.*, 2014 Ark. App. 669. In compliance with our instructions, Dr. Dunn-Wright has now filed a substituted brief and addendum in conformance with our rules, and the case is ripe for decision.

For the purpose of an introduction, a general description of the events is helpful. The School District had a history of violations with the State Board off and on for several years. The applicable statute provides that in the event a school district is on probation for two

consecutive years, the State Board is required to take action it deems necessary to remedy the violations. The School District was on probation for the 2010–11 school year for allowing a certain teacher to teach classes for which the teacher was not certified (sometimes referred to herein as the year-one violation). Then, in early 2012, the Department of Education determined that the School District was again in violation of state regulations because the School District had allowed certain students to graduate with insufficient transcripts (sometimes referred to herein as the year-two violation.) Because the School District was in violation of the state regulations for two consecutive years, the State Board removed the School District's school board and terminated the superintendent as allowed by the applicable statute. The appellant herein, Dr. Dunn-Wright, was the superintendent of the School District who was terminated by the State Board.

Although Dr. Dunn-Wright lists five points on appeal, she effectively raises only four arguments. One of appellant's arguments is that the State Board's decision to remove her as superintendent was not supported by substantial evidence. Her remaining arguments are that she was denied her constitutional right to due process, that the State Board's action was unconstitutional because it unlawfully impaired her employment contract with the School District, and that the State Board's decision was inconsistent with its prior decisions in similar cases. Based on our review, we affirm the State Board's decision.

Review of administrative agency decisions, both by the circuit court and appellate court, are limited in scope. *C.C.B. v. Ark. Dep't of Human Servs.*, 368 Ark. 540, 247 S.W.3d 870 (2007). The standard of review by both the circuit court and appellate court is whether

SLIP OPINION

there is substantial evidence to support the agency's findings. *Id.* Thus, the review by the appellate court is not directed toward the circuit court, but rather toward the decision of the agency. *Pine Bluff for Safe Disp. v. Ark. Poll. Control & Ecol. Comm'n*, 354 Ark. 563, 127 S.W.3d 509 (2003). In determining whether a decision is supported by substantial evidence, we review the record to ascertain if the decision is supported by relevant evidence that a reasonable mind might accept to support a conclusion. *Id.*

In arriving at our decision to affirm the agency decision in this case, it is helpful to review the statutory scheme relied upon by the State Board under Arkansas Code Annotated sections 6-15-201 et seq. (Repl. 2013). The State Board is authorized and directed to develop comprehensive regulations and standards to be used by the State Board and the Department of Education in the accreditation of school programs. The Department of Education is required to evaluate school districts to ensure that the school districts comply with the accreditation standards set by the State Board. If the Department determines that a school district fails to meet the accreditation standards, then Arkansas Code Annotated section 6-15-203(a)(1) provides that the Department of Education shall notify the school district of its failure no later than May 1 of that year. In the event the school district disagrees with the determination by the Department of Education, Arkansas Code Annotated section 6-15-203(b)(1) provides that the school district may appeal the determination to the State Board. Subsection (b)(3) provides that the appeal to the State Board must be filed no later than May 15, in which case the State Board must hold the hearing prior to June 30 of the same year. Subsection (b)(4) provides that, at the appeal hearing, the State Board may either confirm the

determination issued by the Department of Education that the school district failed to comply with the accreditation standards, or the State Board may agree with the school district and sustain its appeal.

Continuing with the statutory process, if, under Arkansas Code Annotated section 6-15-203, the State Board confirms the determination of a violation issued by the Department of Education, then the next step in the statutory scheme is for the State Board to determine, under Arkansas Code Annotated section 6-15-207, the corrective action that it deems necessary to address the school district's failure to meet the accreditation standards. Subsection (b) provides that, if a school district has failed to meet all standards for accreditation for two consecutive school years, then the State Board shall take at least one of the actions listed in subsection (c).[1] Arkansas Code Annotated section 6-15-207(c) lists the full spectrum of possible actions available to the State Board. Arkansas Code Annotated section 6-15-207(c) enumerates eight different actions the State Board is allowed to take to enforce compliance of the accreditation standards. The potential actions range from simply reorganizing staff or implementing a specific curriculum, to more aggressive actions of reconstituting the leadership of the school district by removing permanently the superintendent and the school district's school board, or even closing down a school district. Within the purview of this statutory scheme comes this appeal.

---

[1]There is an exception to this requirement under subsection (b) when a school district's failure to meet standards was due to impossibility caused by external forces beyond the district's control, but that exception has no application to this case.

It is undisputed that the Department of Education determined that the School District failed to meet the accreditation standards for school year 2010–11. The School District did not appeal that determination (the year-one violation). As a result, the School District was placed on probation. In an attempt to improve the education process, the School District hired the appellant, Dr. Dunn-Wright, as superintendent for school year 2011–12. In February 2012, the Department of Education performed an on-site accreditation evaluation of the School District. On February 23, 2012, the Department wrote a letter to Dr. Dunn-Wright advising her of certain violations in the review of the Dollarway School District Office. The Department also wrote a letter to the principal of Dollarway High School, Arnold Robertson, advising him of certain violations at Dollarway High School.[2]

On April 30, 2012, Johnie Walters from the Department of Education wrote a letter to the "District Superintendent" advising the Superintendent that an Initial Accreditation Status Report ("report") was prepared and delivered by the Department on March 5, 2012, setting forth a list of initial probationary violations and/or citations for the 2011–12 school year and that the violations and/or citations had not been remedied (the year-two violation). The letter referenced Arkansas Code Annotated section 6-15-203. The attached report indicated that Dollarway High School was placed on probation for accreditation status for school year 2011–12. The letter included instructions that if the Superintendent believed that the Department of Education had improperly determined that the School District had failed

---

[2]Similar letters were written to the principals of Morehead Middle School, Matthews Elementary School, Townsend Park Elementary School, and Altheimer Martin Elementary School.

to meet the Standards of Accreditation for that year, the School District had a right to file its written appeal to the State Board but that the appeal must be filed no later than May 15, 2012.

It is undisputed that the School District did not file a written appeal of the determination of the year-two violation made by the Department of Education by May 15, 2012. On May 17, 2012, two days after the period to file the appeal expired, Johnie Walters of the Department of Education wrote a followup letter to the Superintendent. At the top of the letterhead on the May 17, 2012 letter, the Department stated in bold font and all caps: PROBATIONARY LETTER—YEAR TWO PROBATION. This letter was addressed to Dr. Dunn-Wright, Superintendent. In pertinent part, this letter restated that on May 1, 2012, the Department notified the School District that it had failed to meet the Standards of Accreditation for Dollarway High School for the 2011–12 school year. Further, it stated that although the School District had a right to appeal the determination of the violation to the State Board, the School District did not appeal the determination. The letter also advised Dr. Dunn-Wright that the purpose of the letter was to provide her with notice that the State Board was required to take action to address the School District's failure to meet the accreditation standards for two consecutive years and that the matter would be taken up at the scheduled State Board meeting on June 11, 2012. The letter further clearly indicated that the State Board was allowed to take any of the actions set forth in Arkansas Code Annotated section 6-15-207(c). All eight potential actions were listed in the May 17, 2012 letter, including subsection 7, which provides: "Reconstitute the leadership of a school district by

removing permanently or suspending on a temporary basis the superintendent of the school district or any particular board members of a school district. . . ." The May 17, 2012 letter also instructed the Superintendent, pursuant to Arkansas Code Annotated section 6-15-208, that the School District must publish the probationary status determination and findings of the State Board to the public and to the parents or care givers of each student enrolled in the School District.

Dr. Dunn-Wright responded to the Department's letter three days later. On May 20, 2012, Dr. Dunn-Wright wrote a letter to Johnie Walters with the Arkansas Department of Education wherein she stated in pertinent part: "We regretfully acknowledge that we are, in fact, in violation of rule 14, Standard IX of the rules governing Standards for Accreditation of Arkansas Public Schools, specifically transcript irregularities." After describing some remedial action already taken by the School District to rectify the irregularities, Dr. Dunn-Wright concluded: "As a first year superintendent, I am respectfully open/receptive to any other suggestion(s) that the [Arkansas Department of Education] may have for us to guard against these future irregularities happening again."

The potential actions to be considered by the State Board were discussed at the scheduled meeting of the State Board held on June 11, 2012. Dr. Dunn-Wright appeared and spoke at the meeting and stated that she inherited many of the School District's problems when she was hired, and she indicated that she was accountable but not responsible. Dr. Dunn-Wright stated that she was putting safeguards in place to reduce the chance of future accreditation violations.

SLIP OPINION

Following the June 11, 2012 meeting, the State Board entered an order stating that the School District had violated accreditation standards for both the 2010–11 and 2011–12 school years. The State Board specifically found that, with respect to the 2011–12 violation found by the Department of Education (the year-two violation), the School District was timely notified of the violation, failed to appeal that finding to the State Board, and instead acknowledged the violation. The State Board stated that pursuant to the provisions of Arkansas Code Annotated section 6-15-207(b) and (c), the State Board was required to take at least one of the actions listed in subsection (c). Pursuant to subsection (c)(7), the State Board ordered that the leadership of the School District be reconstituted through the permanent removal of the School District superintendent and the School District school board members. The State Board delegated the Commissioner of Education the authority to govern the School District.

We first address Dr. Dunn-Wright's argument on appeal that the State Board's action of reconstituting the School District and removing her as superintendent was not supported by substantial evidence. The year-one violation found in the 2010–11 school year can be generally described as the School District allowing an unqualified teacher to teach certain classes. The year-one violation was not appealed. The year-two violation found in the 2011–12 school year was that upon reviewing the previous year's graduating class transcripts, the Department found that several students did not have enough credits to graduate. These transcript irregularities were not discovered until the February 2012 audit.

SLIP OPINION

Dr. Dunn-Wright argues that, although the transcript irregularities were discovered by the Department of Education during the 2011–12 school year, the transcripts reviewed by the Department were from the previous 2010–11 school year. Because the actual transcript violations occurred during the 2010–11 school year, Dr. Dunn-Wright contends that the record is devoid of any evidence that any violations occurred during the 2011–12 school year. In other words, Dr. Dunn-Wright argues that violations did not actually occur during consecutive school years. That being so, Dr. Dunn-Wright submits that a reasonable person could not conclude that the School District had failed to meet accreditation standards for two consecutive school years, and that the State Board's decision to reconstitute the School District and permanently remove her as superintendent should be reversed.

We hold that any challenge to the finding that the School District violated accreditation standards for the 2011–12 school year has been waived because the School District failed to appeal that finding by the Department of Education to the State Board as required by Arkansas Code Annotated section 6-15-203. The Department of Education notified the School District of the Department's finding of a violation for the 2011–12 school year in a letter dated April 30, 2012, with clear instructions that the School District had a right to appeal that determination if the Superintendent believed this finding to be improper. The School District had fifteen days to file an appeal. No appeal was taken. After the time to appeal had expired, the Department of Education wrote a follow-up letter to Dr. Dunn-Wright on May 17, 2012, advising her that because the School District had failed to meet accreditation standards for a second consecutive year and had not filed an appeal, the State

10

Board was required to take action and a meeting would be held on June 11, 2012, to determine which action would be taken. After receiving this notice, Dr. Dunn-Wright wrote a response letter to the Department on May 20, 2012, wherein she acknowledged the violation, and in fact welcomed any suggestions from the Department to safeguard against future irregularities.

The School District failed to contest the 2011–12 violation (the year-two violation), and because there was no appeal to the State Board, the purpose of the June 11, 2012 meeting was only to determine which action the State Board would take under Arkansas Code Annotated section 6-15-207(c). That subsection plainly authorized the State Board to reconstitute the leadership of the School District by removing the Superintendent and School District's board members. The avenue for the School District and Superintendent to challenge the Department's finding of a violation for the 2011–12 school year was through an appeal to the State Board, and because there was no appeal of the violation to the State Board, Dr. Dunn-Wright's challenge before both the circuit court and the court of appeals comes too late.

Dr. Dunn-Wright also argues that her constitutional due-process rights were violated because she was denied notice and an opportunity to challenge her permanent removal as the superintendent of the School District. Dr. Dunn-Wright relies on the notice requirements found in Arkansas Code Annotated section 6-17-301 (Repl. 2013), which pertain to a school district's hiring and termination of licensed personnel including superintendents. Dr. Dunn-

SLIP OPINION

Wright contends that the letter she received dated May 17, 2012, provided no notice that she was being terminated or even recommended for termination.

Contrary to the assertion of Dr. Dunn-Wright, the provisions of Arkansas Code Annotated section 6-17-301 are not applicable to this case because that statute governs a school district's termination of a superintendent for cause. The applicable statute in this matter is Arkansas Code Annotated section 6-15-203, and the School District was afforded notice and a right to appeal under those provisions. More important to our disposition of this issue, Dr. Dunn-Wright never raised the issue of lack of notice or constitutional due process to the State Board either before, or during, the June 11, 2012 meeting.[3] In order to preserve an issue for review it must be first raised at the administrative level. *See Franklin v. Ark. Dep't of Human Servs.*, 319 Ark. 468, 892 S.W.2d 262 (1995). After Dr. Dunn-Wright received the May 17, 2012 letter advising her of the year-two violation, she acknowledged the violation and participated in the June 11, 2012 meeting wherein she was clearly on notice that one of the actions taken could include her removal as superintendent. Dr. Dunn-Wright failed to timely raise this argument to the State Board, and she is now precluded from arguing that she was denied due process on appeal.

---

[3]Dr. Dunn-Wright also claims she did not receive the April 30, 2012 letter from the Department of Education and that she was denied due process in this respect because she did not know she had the right to appeal the 2011–12 violation. Even assuming that Dr. Dunn-Wright did not receive the April 30, 2012 letter, as she alleges, Dr. Dunn-Wright did not raise this due-process argument to the State Board of Education at the June 11, 2012 meeting, and furthermore, she admitted the violation in her May 20, 2012 letter to the Department of Education.

We address appellant's remaining two arguments together. Dr. Dunn–Wright argues that the State Board's action was unconstitutional because it unlawfully impaired her employment contract with the School District, and also that it was inconsistent with its prior decisions in similar cases. We will not consider these arguments because neither was presented to the State Board, and therefore the arguments are not preserved for review. *See Franklin*, *supra*.

Affirmed.

ABRAMSON and HOOFMAN, JJ., agree.

*McKissic & Associates, PLLC*, by: *Jackie B. Harris*, for appellant.

*Kendra Clay*, Staff Attorney, Arkansas Department of Education, for appellee.