SLIP OPINION



Cite as 2015 Ark. App. 459

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-1015

| | |
|---|---|
| ODYSSEY HEALTHCARE OPERATING A. LP, D/B/A ODYSSEY HEALTHCARE OF LITTLE ROCK<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL SERVICES<br><br>APPELLEE | **Opinion Delivered** September 9, 2015<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-14-1185]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Odyssey Healthcare Operating (Odyssey) brings this appeal from the circuit court's order affirming the decision of the Arkansas Department of Human Services, Division of Medical Services (the department or DHS). For reversal, Odyssey argues that DHS failed to comply with its own rules and regulations and with the Arkansas Medicaid Fairness Act[1] in determining that the services were not medically necessary. Further, Odyssey questions whether DHS retained subject-matter jurisdiction at the time of the administrative law judge's (ALJ) decision. We affirm.

---

[1]Arkansas Code Annotated §§ 20-77-1701 to -1718 (Repl. 2014).



I. *Procedural History*

Odyssey is a licensed hospice provider. Odyssey was subject to audits conducted by DHS. A contractor chosen by the federal Centers for Medicare and Medicaid Services performed a Medicaid integrity audit and reviewed records of Odyssey's current and former patients for hospice services provided between January 1, 2006, and December 31, 2009. After reviewing forty-three patient records, the contractor found that thirteen of the patients had received hospice services that were not medically necessary and recommended a recoupment of $315,473.52 in its final audit report.

The findings in the final audit report were appealed by Odyssey, and an administrative hearing was held before an ALJ appointed by DHS. During the hearing, DHS dropped two of its claims in full, and withdrew a portion of the requested recoupment for a third patient. After receiving evidence for four days, the ALJ issued a 123-page order. In the order, the ALJ found that the services that Odyssey had provided to three patients were medically necessary; however, the ALJ rejected Odyssey's arguments as to the remaining eight claims and found the services rendered to those patients were not medically necessary. Ultimately, the ALJ recommended that the department recoup $242,446.11 from Odyssey. The ALJ's decision was adopted as the final agency action on February 19, 2014.

The final agency action was appealed by Odyssey to the Pulaski County Circuit Court. The circuit court affirmed DHS's decision in a two-sentence order. This appeal followed.



II.  *Standard of Review*

In this appeal, our review is directed not to the decision of the circuit court, but rather to the decision of the administrative agency. *Dep't of Health & Human Servs. v. R.C.*, 368 Ark. 660, 249 S.W.3d 797 (2007). Review of administrative agency decisions, by both the circuit court and appellate courts, is limited in scope. *Ark. Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *Id.*

An appellate court sitting in review of a finding of an administrative agency must affirm the agency's finding if the finding is supported by any substantial evidence. Ark. Code Ann. § 25-15-212(h) (Repl. 2014); *C.C.B. v. Ark. Dep't of Health & Human Servs.*, 368 Ark. 540, 543–44, 247 S.W.3d 870, 872 (2007). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, giving the evidence "its strongest probative force in favor of the administrative agency." *Reed v. Arvis Harper Bail Bonds, Inc.*, 2010 Ark. 338, at 4–5, 368 S.W.3d 69, 73.

As with all appeals from administrative decisions under the Administrative Procedure Act, the circuit court or the appellate court may reverse the agency decision if it concludes that the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of

 

record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h).

The party challenging the agency's decision has the burden of proving an absence of substantial evidence. *Ark. Dep't of Human Servs. v. Nelson*, 2015 Ark. App. 98, 455 S.W.3d 859. In order to establish the absence of substantial evidence, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id*. This court reviews the entire record to find whether the testimony supports the finding that was made by the ALJ. *Id*. The requirement that the agency's decision not be arbitrary or capricious is less demanding than the requirement that it be supported by substantial evidence. *Collie v. Ark. State Med. Bd.*, 370 Ark. 180, 258 S.W.3d 367 (2007). To be invalid as arbitrary or capricious, an agency's decision must lack a rational basis or rely on a finding of fact based on an erroneous view of the law. *Id*. Where the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Id*.

### III. *The Issue*

The dispute in this case centers on whether the hospice services provided to thirteen of Odyssey's patients were appropriate under the Arkansas Medicaid program. Under the Medicaid program, there are two requirements in order to obtain hospice benefits: (1) the services must be "medically necessary," and (2) the hospice patient must be terminally ill. The department's Medicaid regulations define "medically necessary" as services that are

> reasonably calculated to prevent, diagnose, correct, cure, alleviate or prevent the
> worsening of conditions that endanger life, cause suffering or pain, result in illness or

injury, threaten to cause or aggravate a handicap or cause physical deformity or malfunction and if there is no other equally effective (although more conservative or less costly) course of treatment available or suitable for the beneficiary requesting the service. For this purpose, a "course of treatment" may include mere observation or (where appropriate) no treatment at all.

*Arkansas Hospice Provider Manual*, Section IV, Glossary, 400.00. "Terminally ill" is defined as having a medical prognosis with a life expectancy of six months or less. *Arkansas Hospice Provider Manual*, Section II, 210.200(B).

IV. *The Arguments*

A. Medicaid Guidelines

Odyssey first argues that the department's audit findings are inconsistent with the rules that establish medical necessity and that the audit team used guidelines outside of DHS's regulations in finding against Odyssey. Specifically, it is Odyssey's position that the audit team erroneously utilized guidelines not adopted or promulgated as a rule by DHS. Essentially, Odyssey argues that hospice services in Arkansas are proper for reimbursement under Medicaid if they are both "medically necessary" and for the benefit of a "terminally ill" patient. Both of these terms are clearly defined. Beyond these definitions, and unlike some other states, Arkansas has not provided further guidelines for use in determining medical necessity in Medicaid cases. While Arkansas has not adopted or promulgated guidelines for use in determining medical necessity in Medicaid cases, Odyssey argues that DHS used guidelines approved for use in Medicaid claims administered by National Government Services (NGS) in states other than Arkansas. Because these NGS guidelines used by DHS have not been promulgated, Odyssey argues it was reversible error. Instead of using these

NGS guidelines, Odyssey argues that the proper guidelines were those utilized by Palmetto Group Benefits Administrator (Palmetto), an intermediary that processes *Medicare* claims in Arkansas.

The guidelines arguments of Odyssey were dismissed by the ALJ. Admittedly, there are differences between the two sets of guidelines. For example, there was a requirement that the patient show a "general decline" incorporated into the NGS guidelines, while there was no such requirement in the Palmetto guidelines. The ALJ found that the distinction between the Palmetto and NGS guidelines was legally irrelevant because neither set applied to Medicaid cases in Arkansas. The ALJ also discussed the inconsistency in Odyssey's argument:

> Odyssey argues that the [NGS guidelines] were not applicable, but if the reviewers had used the Palmetto [guidelines], which are what Odyssey used and insist are the correct ones to be applied, these would have also been inapplicable since no [guidelines] are applicable to Medicaid cases in Arkansas, a fact which Odyssey does not dispute. It does not matter which were used as long as it was part of a full review of the medical facts and information and applying sound medical judgment to evaluate the cases in light of Arkansas's definition of medical necessity and terminal illness.

If DHS could not use the NGS guidelines because they had not been adopted or promulgated by the department, it equally could not utilize the Palmetto guidelines because they also had not been promulgated or adopted by the department for use in Medicaid cases.

In further dismissal of Odyssey's guidelines arguments, the ALJ found that the audit team utilized the NGS guidelines as merely one piece in determining the question of medical necessity and whether the patient met the definition of "terminally ill" or not. Odyssey's own witness, Dr. Ronald Crossno, acknowledged that there are no Palmetto guidelines for particular diseases and, in the absence of a guideline, Odyssey might use the guidelines and



criteria of another provider if it was applicable. Thus, there was substantial evidence to support the ALJ's decision about the use of the guidelines.

## B. Presumption

Next, Odyssey argues that the ALJ failed to comply with the Medicaid Fairness Act by not applying the presumption in favor of the treating physician found in Ark. Code Ann. § 20-77-1708(a). Under this statute, there is a rebuttable presumption in favor of the medical judgment of the performing or prescribing physician in determining the medical necessity of treatment. Ark. Code Ann. § 20-77-1708(a). Odyssey acknowledges that it has the burden of proving medical necessity as to each patient and relies on the statutory presumption to argue that DHS should defer to the medical judgment of the treating physicians in determining the medical necessity of hospice treatment. However, the argument is not supported by the statute because the degree of deference that Odyssey seeks is not called for by the statute. Section 20-77-1708(b) makes it clear that the presumption is rebuttable by directing the administrative law judge to "state the manner by which the presumption was overcome."

Odyssey makes a blanket argument that the ALJ failed to honor the presumption. A review of the record shows that the ALJ made specific findings as to each patient whether the presumption had been overcome by the evidence and testimony, with the ALJ stating the factual basis for each finding. In some cases, the ALJ found that the presumption had not been rebutted. In other cases, the presumption was found to have been rebutted only as to specific periods of time. Because the ALJ explained how the presumption was or was not rebutted,

she complied with the statute granting the presumption. Odyssey's argument does not challenge the specific findings that the presumption was rebutted or not as to each patient.

## C. Due Process

Odyssey also makes a further argument that DHS's failure to comply with its regulations and the Medicaid Fairness Act deprived Odyssey of due process. However, this argument was not presented to either the ALJ or the circuit court. It was Odyssey's obligation to raise an issue first to the administrative agency and obtain a ruling thereupon in order to preserve an argument for appeal. *Mountain Pure, LLC v. Little Rock Wastewater Util.*, 2011 Ark. 258, 383 S.W.3d 347; *Louisiana v. Joint Pipeline Grp.*, 2010 Ark. 374, 373 S.W.3d 292. Because the argument was not made below, we do not address it.

## D. Subject–Matter Jurisdiction

Finally, Odyssey makes what it calls a subject-matter-jurisdiction argument, contending that DHS lost jurisdiction prior to the ALJ's decision. In order to understand this point, some further background is in order. As we mentioned earlier, the ALJ held a hearing over four days in December 2012 and January 2013. At the conclusion of the hearing, the record was held open and the parties submitted briefs and arguments to the ALJ by late April 2013. The Medicaid Fairness Act was amended effective August 16, 2013, to provide that an administrative law judge from the Department of *Health*[2] shall conduct all Medicaid provider administrative appeals of adverse decisions under the Act. *See* Ark. Code Ann. §

---

[2]As previously mentioned, the ALJ who heard this case was designated by the Department of *Human Services*.

8

20-77-1704(b)(1)(B)(i). Section 20-77-1704(k)(2) makes the amendment applicable to a pending appeal that had not been finally resolved at either the administrative or judicial level on the effective day of the Act. The ALJ's decision was handed down on December 4, 2013. Because the ALJ in this administrative appeal was from DHS and not the Department of Health, Odyssey argues that DHS lost subject-matter jurisdiction.

Odyssey's characterization of this argument as an issue of subject-matter jurisdiction is important because Odyssey did not raise the issue before the ALJ and only briefly mentioned the issue in its reply brief filed in the circuit court. Generally, in order to preserve an issue for review, it must be first raised at the administrative level. *Dunn-Wright v. Ark. State Bd. of Educ.*, 2015 Ark. App. 152, 457 S.W.3d 667. However, this general rule does not apply to issues of subject-matter jurisdiction, which can be raised at any time. *See, e.g., Vibo Corp., Inc. v. State ex rel. McDaniel*, 2011 Ark. 124, 380 S.W.3d 411.

We hold that Odyssey's argument does not concern true subject-matter jurisdiction such that it could be raised at any time. A court or agency is said to have subject-matter jurisdiction of an action if the case is one of the type of cases that the court or agency has been empowered to entertain by the sovereign from which the court or agency derives its authority. *McClain v. Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989). Section 20-77-1704 did not remove Medicaid appeals from the jurisdiction of DHS. Nowhere does section 20-77-1704 state that the final administrative decision will be made by the director of the Department of *Health*, which would indicate that subject-matter jurisdiction has been removed from DHS. Instead, section 20-77-1704(h)(2)(B) provides that an administrative law

9

judge from the Department of Health shall follow DHS's rules in making final decisions. Section 20-77-1704(i) further provides that, until a waiver of the single-agency rule is obtained from the federal government, the final decision in the matter is to be made by the director of DHS's division of medical services, which is where such appeals took place prior to the amendment of section 20-77-1704. What section 20-77-1704 did do was to draw the administrative law judges from another agency, the Department of Health, to make decisions according to DHS's rules, with the final decision being made by the director of DHS's division of medical services.

We reject Odyssey's argument that this is an issue of subject-matter jurisdiction. Because this issue was not presented at the agency level, it is not preserved for appellate review.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*The Health Law Firm*, by: *Gabriel D. Mallard*, for appellant.

*J. Mark White*, Office of Policy and Legal Services, for appellee.