ROBERT J. GLADWIN, Judge
J.C. appeals the Pulaski County Circuit Court's order affirming the administrative decision that he had committed sexual abuse of a minor and that his name should be placed on the Arkansas Child Maltreatment Central Registry.[1] J.C. argues that the agency's decision is arbitrary, capricious, and an abuse of discretion. We affirm.
I. Facts
On August 23, 2013, a report was made to the child-abuse hotline regarding the alleged maltreatment of C.K., born September *880 23, 1998. After an investigation by the Arkansas Department of Human Service (DHS), a finding of child maltreatment was entered against J.C., who timely requested a hearing. The hearing was stayed due to pending criminal charges against J.C. related to the alleged abuse of C.K., but those charges were nolle prossed. An administrative hearing was held on November 29, 2016. C.K. did not appear, but two videotaped recordings of her interviews with investigators and her written statement were admitted as evidence. C.K. alleged that while she and J.C. were alone with her in his locked classroom, J.C. put his hand down her pants and touched her underneath her underwear on her private area. She also said that he had kissed her. He later asked her forgiveness and told her he had been praying about it.
Suzanne Harris, an investigator with the Crimes Against Children Division (CACD) of the Arkansas State Police, testified that she investigated C.K.'s allegations and spoke with her in a recorded interview. C.K. told Harris that she would have lunch in J.C.'s classroom and that he once had tickled her. She said that they had gone to the River Market together during lunch. C.K. told Harris that J.C. had touched her on her "lady area" and on her butt. In her written statement, C.K. stated that J.C. had put his hands inside her panties and said he wanted to feel her once. Harris testified that it was not uncommon for children to delay disclosing sexual abuse or sexual contact. She said that the basis for her true finding of sexual contact was that after an in-depth interview with C.K. and reviewing C.K.'s written statement, Detective Trent of the Little Rock Police Department sought an arrest warrant. Harris stated, "We can't go against law enforcement." She also said that after the charges had been dropped, her "attitude toward the case" did not change. She said that child-maltreatment law is different than criminal law. Harris said that C.K.'s shoplifting charge over the "intervening weekend" had no bearing on her true finding for sexual contact.
Harris said that she spoke to Ms. Rook, who works at C.K.'s school. Ms. Rook told Harris that J.C. had talked to her about C.K. being upset with him for giving her a "B." He had told Rook that C.K. wanted to start a book club and that she had been texting him. Rook also said that J.C. had stated that he and C.K. had lunch together in his classroom; Rook had told him that doing so was not a good idea; and J.C. wanted to argue over the issue.
Harris said that she had talked to J.C., who denied an interview but told her he believed C.K.'s allegation was in retaliation for a grade of "86" that he had given her. Harris also talked to C.K.'s mother and obtained written statements from other students.
J.C. testified that he was C.K.'s English teacher and that she had eaten lunch with him in his classroom. In response to a written allegation against him by another student, he said that he had taken that student into the hallway to address her wearing a tank top that exposed her cleavage. He said the school had a strict dress-code policy, and the student had violated the policy. He said that it was his job to reprimand her, but he had done so outside the classroom. He said that he had given her a break by not sending her to the principal's office.
J.C. said that it was not against school policy to take a student off campus for lunch and that he had not known he was supposed to sign out with the student. He said that his mentor, Mr. Sisk, who is another English teacher, took students off campus for lunch. He said that this was his first teaching job out of college, and *881 the allegation occurred six weeks into his job. J.C. had wanted to encourage the formation of a book club, and he said that C.K. was part of the club.
J.C. denied that anything sexual had occurred between him and C.K. He said that when C.K. failed to turn in a homework assignment, her grade was lowered to a "B," and she had been very upset. He described her as having gritted teeth, a red face, and teary eyes. C.K. told him that he had embarrassed her in front of the class when he had called her down. He then talked to Ms. Rook because he had never seen C.K. behave in that manner. He said that C.K. had disclosed to him that her parents were separated and that she was having a hard time. He said that he had wanted the counselor to talk to C.K. and that he had talked to Ms. Rook about C.K.'s behavior. He told Ms. Rook that C.K. had eaten lunch in his classroom and that they had texted each other. He said that a counselor at school talked to C.K. and that C.K. denied that he had "done anything." He said that it was a week later that C.K. made the allegations against him.
The administrative law judge (ALJ) issued an opinion after reviewing the videotaped evidence, finding in part:
8. Although C.K. did not testify at the hearing, I find C.K.'s statements to be credible and plausible. Her manner in the video of her interview was straightforward and detailed. I do not find any significant motive for her to make up the allegation.
9. On the other hand, [J.C.'s] explanations for his actions are not credible. I do not find his reasoning for his contact with C.K. by texting her, phoning her, having lunch in his classroom alone with her, and going off campus for lunch alone with her, to be convincing. [J.C.'s] actions are inappropriate for a teacher and appear to be more about grooming her for a sexual encounter. His going to the counselor after the incident with C.K., claiming she was upset about a "B" grade, appear to [be] more of an attempt to explain any allegation C.K. might make about inappropriate touching.
10. I find that [J.C.], who was not married to C.K., touched C.K.'s vagina for a sexual purpose.
The opinion also stated that there was sufficient evidence to support a finding of sexual abuse, citing the Arkansas Child Maltreatment Act, and the facts that supported a finding that the elements of the statute had been met. Ark. Code Ann. §§ 12-18-101 to - 1202 (Repl. 2016 & Supp. 2017). The ALJ decided that the agency had met its burden of proving by a preponderance of the evidence that J.C. had sexually abused C.K. and that the allegations were true. It was ordered that J.C.'s name be placed on the Arkansas Child Maltreatment Central Registry. J.C. appealed the ALJ's decision to the Pulaski County Circuit Court, which affirmed the agency's decision without a hearing. J.C. filed a timely notice of appeal, and this appeal followed.
II. Applicable Law
DHS is an "agency" as defined by the Administrative Procedure Act. See Ark. Code Ann. § 25-15-202(2)(A) (Supp. 2017). Review of administrative-agency decisions, by both the circuit court and the appellate court, is limited in scope. Shaw v. Ark. Dep't of Human Servs. , 2018 Ark. App. 322, 550 S.W.3d 925. The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. Id. The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, *882 because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts to determine and analyze legal issues affecting their agencies. Staton v. Ark. State Bd. of Collection Agencies , 372 Ark. 387, 277 S.W.3d 190 (2008). When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. Id.
Additionally, appellate courts refuse to substitute their own judgment for that of an agency. See Ark. Bd. of Registration for Prof'l Geologists v. Ackley , 64 Ark. App. 325, 984 S.W.2d 67 (1998). It is the prerogative of the agency to believe or disbelieve the testimony of any witness and to decide what weight to give the evidence. Ark. State Police Comm'n v. Smith , 338 Ark. 354, 994 S.W.2d 456 (1999). When conducting our review, we look to the findings of the administrative agency, keeping in mind that courts have held that the hearing officer is in the best position to determine the credibility of witnesses and decide the proper weight to give the evidence. Id. It is the appellant's obligation to raise an issue first to the administrative agency and obtain a ruling thereupon in order to preserve an argument for appeal. Louisiana v. Joint Pipeline Grp. , 2010 Ark. 374, 373 S.W.3d 292.
Either the circuit court or the appellate court may reverse the agency decision if it concludes the substantial rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other error or law; (5) not supported by substantial evidence of record; or (6) arbitrary, capricious, or characterized by abuse of discretion. Ark. Code Ann. § 25-15-212(h)(1)-(6) (Repl. 2014).
Substantial evidence is valid, legal, and persuasive evidence that a reasonable mind might accept as adequate to support the agency decision. Ark. Prof'l Bail Bondsman Licensing Bd. v. Oudin , 348 Ark. 48, 69 S.W.3d 855 (2002). The challenging party must prove an absence of substantial evidence and must demonstrate that the proof before the administrative agency was so nearly undisputed that fair-minded persons could not reach its conclusion. Id. The question is not whether the evidence would have supported a contrary finding but whether it supports the finding that was made. Id.
III. Argument
J.C. claims that the agency's decision is arbitrary, capricious, and an abuse of discretion. He contends that although the ALJ recited some of the evidence, the skimpy findings ignore the weaknesses in the evidence and inconsistencies in the agency's allegations. J.C. argues that he was a new teacher, full of enthusiasm, and the accuser mistook his enthusiasm for a peer-to-peer friendship. He claims that when confronted with the reality that she actually had to do the work for her grade, C.K. lashed out and, over time, manufactured a story that he had sexually assaulted her. He argues that the prosecutor dropped the criminal charges, declining to subject the claims to adversarial testing. Further, he claims that the agency plowed ahead "buoyed by the lower standard of proof and the total absence of any meaningful evidentiary rules in the hearing." He notes that the CACD automatically founded the case, citing Investigator Harris's testimony that "[w]e can't go against law enforcement."
J.C. contends that the agency's decision is flawed in many respects. First, he complains *883 that the ALJ "purported" to make credibility determinations from a recorded interview of the accuser. J.C. takes issue with the ALJ's characterization of C.K.'s video-recorded interview answers as "straightforward and detailed" and finding that C.K. had no significant motive. J.C. argues that the ALJ did not consider that C.K. was not subjected to cross-examination and that J.C. had presented a significant motive-C.K.'s being upset over a low grade.
He argues that the ALJ's finding that the agency had proved its case by a preponderance of the evidence is not the same thing as determining which version of the incident in the classroom was most credible, as was discussed in the decision. J.C. argues that a credibility determination does not factor in doubt. He also contends that the finding assumes that there was an "incident" at all. He cites Crawford v. Washington , 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), a criminal case wherein the United State Supreme Court discusses that some form of cross-examination is the key to reliability.
J.C. complains that the ALJ ignored that C.K. had been arrested for shoplifting several days after making the allegation against him and that she had lied to law enforcement when confronted, rendering the decision flawed. He also claims that the ALJ ignored that C.K. had changed her story over time. J.C. contends that because of these omissions, the ALJ's decision is insufficient under the statute. See Ark. Code Ann. § 25-15-210(b)(2) (requiring agency decisions to contain a concise and explicit statement of the underlying facts supporting the findings). J.C. argues that the ALJ did not discuss any contrary indications of the evidence but concluded only that he disbelieved J.C.
J.C. claims that the findings regarding his credibility are "significantly unmoored from the actual allegations." He argues that the finding of "inappropriate" is undefined, and the finding of "grooming" does not fit the definition of Arkansas Code Annotated section 5-27-307 (Repl. 2013) (disseminating to a child thirteen years old or younger sexually explicit material to entice the child into sexual activity).
J.C. makes an evidentiary argument that the ALJ permitted irrelevant profile evidence as to what other accusers do, citing Brunson v. State , 349 Ark. 300, 79 S.W.3d 304 (2002). Finally, J.C. argues that the ALJ "appears to have presumed the worst" about him, attributing to him nefarious motives. He argues that the evidence shows that he was a naïve and enthusiastic first-year teacher, unaware of how vulnerable a teacher is to false charges of abuse. J.C. urges that we reverse or remand to the circuit court with instructions to remand to DHS for further proceedings to "properly deal with the issues before it."
DHS claims that J.C. was twenty-four years old and that C.K. was fourteen years old when J.C. engaged in sexual contact with her for the purpose of sexual gratification. These acts are described under Arkansas Code Annotated section 12-18-103(21)(A)(i) (Supp. 2017) ("sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person, or the breast of a female, or the offender requesting to touch a child in a sexual manner). Sexual gratification may be inferred from the attendant circumstances. Ark. Code Ann. § 12-18-103(21)(A)(ii).
DHS contends that the evidence included C.K.'s consistent disclosures, the undisputed facts concerning J.C.'s contact with C.K., and the ALJ's determination of credibility. In all of C.K.'s disclosures-to the school counselor; in an interview with Detective *884 Trent; in an interview with the CACD investigator; and in a written statement-she said the same thing-that she was in J.C.'s classroom for lunch when he touched her on her vagina. In all except her initial disclosure, her statements were consistent and grew in detail. J.C. did not deny that C.K. ate lunch alone with him in his classroom or that they went off campus for lunch one day. He also does not dispute that they were in contact through phone calls and text messages.
Despite J.C.'s contentions that nothing sexual happened between him and C.K., it was the ALJ's responsibility to assess credibility and determine truthfulness. Shaw, supra. Clearly, the ALJ considered the defenses J.C. offered, but it was within his prerogative to reject them. Id. J.C. asks this court to reweigh the evidence; however, the appellate court does not act as a super-factfinder, substituting its own judgment for the credibility determination of the agency. Id. Finally, J.C. cannot complain on appeal that he was denied an opportunity to cross-examine a witness when he failed to subpoena her. Dyer v. Ark. Ins. Dep't , 2015 Ark. App. 446, 468 S.W.3d 303. We hold that because the agency's decision is supported by substantial evidence, the decision cannot be classified as arbitrary or capricious. Burton v. Ark. Dep't of Human Servs. , 2015 Ark. App. 701, 478 S.W.3d 221.
Affirmed.
Murphy and Brown, JJ. agree.

This is J.C.'s second attempt to appeal this case because we ordered rebriefing to comply with Arkansas Supreme Court and Court of Appeals Rule 4-2(a)(5)(A) (2018). See J.C. v. Ark. Dep't of Human Servs. , 2018 Ark. App. 585, 2018 WL 6332787.