Cite as 2022 Ark. App. 312

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-21-344

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL SERVICES<br><br>APPELLANT<br><br>V.<br><br>NORTHWEST ARKANSAS HOSPITAL, SPRINGDALE<br><br>APPELLEE | Opinion Delivered September 7, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION [NO. 60CV-20-6752]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

The dispute in this case concerns whether a one-week inpatient hospitalization was medically necessary for a mentally ill patient. The Arkansas Department of Health, Office of Medicaid Provider Appeals (OMPA) found that it was. Appellant Arkansas Department of Human Services, Division of Medical Services (DHS) appealed OMPA's decision to circuit court, which affirmed OMPA's decision. DHS appeals to this court. We affirm.

Medicaid rules require hospitals, like appellee Northwest Arkansas Hospital (Northwest) to gain approval for inpatient hospitalizations exceeding four days to be reimbursed for those services. Any days of inpatient hospitalization after the fourth day are covered by Medicaid if they are deemed medically necessary, which requires the hospital to submit all available medical information justifying or supporting the necessity of continued

hospitalization. DHS contracts with the Arkansas Foundation for Medical Care (AFMC) to evaluate such claims.

In this case, Medicaid approved the first four days of LB's inpatient hospitalization, March 2 through March 5, 2019. LB had been admitted to acute psychiatric hospitalization due to his depression and expression of suicidal and homicidal ideation. DHS denied the claim for the remaining days of hospitalization, March 6 through 12, 2019, after reviewing the medical records and failing to find evidence of actual acute-care treatment being provided on those days. Northwest appealed the denial to OMPA.

During an OMPA hearing, there is a rebuttable presumption in favor of the medical judgment of the performing or prescribing physician in determining the medical necessity of treatment. Ark. Code Ann. § 20-77-1708(a) (Repl. 2018). This presumption may be overcome by the resisting party, here DHS, with evidence contradicting the medical necessity of treatment. Pursuant to the Arkansas Medicaid Manual, to be reimbursable, treatment must be "medically necessary," which means "reasonably calculated to prevent, diagnose, correct, cure alleviate or prevent the worsening of conditions that endanger life, cause suffering or pain, result in illness or injury, threaten to cause or aggravate a handicap or cause physical deformity or malfunction and if there is no other equally effective (although more conservative or less costly) course of treatment available or suitable for the beneficiary requesting the service." 016.06.35-400.000 Ark. Admin. Code (WL current through April 15, 2022). If an administrative law judge finds that DHS has overcome the presumption in

favor of the medical judgment of the treating physician, the judge must state how the presumption was overcome. Ark. Code Ann. § 20-77-1708(b).

At the OMPA hearing conducted in 2020, DHS presented the testimony of Dr. Tom Tinsman, the medical director for AFMC, which provides initial evaluations for DHS on claims for Medicaid reimbursement regarding inpatient hospital stays. Northwest presented the testimony of Dr. Brian Hyatt, LB's treating psychiatrist.

Dr. Tinsman explained AFMC's review and the opinion that LB was never actually a danger to himself. Tinsman noted that that the emergency room doctor thought LB was drug seeking, and their reviewing psychiatrist had concerns that there was inadequate patient specific information. The progress notes had generic detail, such as "3-plus helplessness, 3-plus fretting, 2-plus hopelessness, and 2-plus impulse dyscontrol," without any explanation of what scale was being applied. The generalized details of LB's being severely psychiatrically ill, depressed, suicidal, and in crisis were repeated in the progress notes, the relevant details never changed throughout LB's hospital stay, there were no explanations of fact-specific concerns about LB's behavior or statements during hospitalization, and LB received outpatient oral medication as his treatment while hospitalized. Dr. Tinsman explained that the documentation lacked information to support the need for acute inpatient care: "All we need to see is enough information to understand that yes this patient is either actively dangerous to self or others or so impaired that they cannot function in an outpatient setting." Dr. Tinsman's assessment was that LB had been in the hospital six days longer than he should have been. Dr. Tinsman clarified that he was not giving an opinion on "medical

3

necessity" but rather whether an *acute level of care* was medically necessary for LB from March 6 through 12. Dr. Tinsman added that AFMC does not render opinions about the medical-necessity issue regarding safe discharge.

Dr. Hyatt, LB's treating psychiatrist, testified that he believed acute inpatient admission was medically necessary from March 6 through 12. Dr. Hyatt was truly concerned that LB might be his first suicide. LB had horrible back pain that could not yet be surgically treated, he had diabetes, and he was living between hotels and his mother's home. LB had attempted suicide multiple times since his discharge from the hospital in March 2019. Dr. Hyatt disputed that the medical records lacked sufficient or proper information; he insisted that he saw his patients every day; and he said that physician assistants are not permitted to see a patient on their own, so he would have been present at those visits. Dr. Hyatt explained that nurses, technicians, and therapists would check on patients and make their own assessment notes, but their notes did not have the weight of the board-certified treating physicians. He stated that antidepressant medications such as Celexa take weeks to take their full effect, so there would be no need to change medication so early; furthermore, there was no such thing as outpatient versus inpatient depression medication. Dr. Hyatt explained that the rating system was an internal communication device well known to the hospital staff and that a treatment-team meeting was conducted every morning to assess patients and determine whether they are ready for discharge. While Dr. Hyatt considered other hospital staff's input, the final decision on whether his patient should stay in the hospital was ultimately left to him alone. Dr. Hyatt summed up LB's six days of hospitalization:

4

It is my professional medical opinion as a board certified psychiatrist that that patient could not be safely discharged, and though "safely discharged" is a meaningless term to Dr. Tinsman, it means a lot to me, and he could not be safely discharged. I know this patient and their baseline extremely well. He does not have a good life. He lives with his mother half the time, he lives in motels the other half. The reason he has had multiple suicide attempts as of late is he attempted to go to his daughter's wedding and was ejected. He doesn't have anything. He's got his mom, and everybody else has turned his back on him. Literally, our group is the only place that he can go to get help. And to say that he is there for pain medications is silly. The last few times that he has been there we haven't given him any pain medications outside of Motrin and Tylenol.

Dr. Hyatt had sixteen years of experience, had treated LB for years, and had a good rapport with him. LB had had multiple psychiatric admissions in the past. LB would report to the emergency department when he felt suicidal, and when he did not, he would try to kill himself. Dr. Hyatt agreed there was no scientific test to know when a patient would be ready for discharge; he could only rely on his experience and professional judgment.

OMPA's administrative law judge rendered a decision, finding that the statutory presumption was triggered in favor of hospitalization because LB's treating physician believed it to be medically necessary. The OMPA judge recognized the opposing opinion offered by DHS through Dr. Tinsman and listed a number of Tinsman's criticisms, among them: (1) his belief that LB was faking suicidal ideation to obtain pain medications; (2) his concern that Dr. Hyatt failed to actively supervise the staff who prepared LB's progress notes and failed to personally monitor his patient; (3) his opinion that the medical records had too little detail to be compelling; (4) his belief that Celexa is an outpatient medication and that its effects were not monitored in the medical notes; and (5) the inconsistency and occasional mistakes in the medical notes that were written, some days listing assessments and

5

some days not at all. Overall, the OMPA judge found that Dr. Hyatt's testimony and opinions were more compelling and that Dr. Tinsman's concerns were of less weight. The OMPA judge did not find the medical records to be lacking in clarity, quality, or quantity. The OMPA judge concluded that (1) DHS failed to overcome the statutory presumption in favor of the treating physician's judgment in determining medical necessity and (2) even absent the presumption, the greater weight of all the evidence was in favor of LB's six days of hospitalization as being medically necessary. DHS appealed the OMPA decision to circuit court but did not prevail. DHS now appeals to this court.

DHS argues that the OMPA judge misapplied the law, acted in an arbitrary and capricious fashion, abused his discretion, acted on unlawful procedure, and rendered a decision that lacks substantial evidence to support it. In sum, DHS argues that it was placed in an impossible position to disprove the need for hospitalization in the face of incomplete, sparse, and sometimes erroneous medical records. DHS has failed to demonstrate reversible error.

In this appeal, our review is directed not to the decision of the circuit court, but rather to the decision of the administrative agency. *Odyssey Healthcare Operating A. LP v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 459, 469 S.W.3d 381. Review of administrative agency decisions, by both the circuit court and appellate courts, is limited in scope. *Id.* The standard of review is whether there is substantial evidence to support the agency's findings. *Id.* Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, giving the evidence its strongest probative force in favor

6

of the administrative agency. *Id.* In an appeal from an administrative decision under the Administrative Procedure Act, the party challenging the agency's decision has the burden of proving an absence of substantial evidence. *Id.* Stated differently, the challenging party must demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach its conclusion. *Id.* This court reviews the entire record to find whether the testimony supports the finding that was made by the administrative law judge. *Id.* When the agency's decision is supported by substantial evidence, it automatically follows that it cannot be classified as unreasonable or arbitrary. *Id.*

OMPA issued an extremely detailed twenty-six-page order reciting the chronology of the facts, the law and legal issue at hand, the evidence and testimony presented by each side, and OMPA's analysis of each point raised by each party. OMPA found that Dr. Hyatt's opinion was of more value; that Dr. Hyatt adequately supervised his staff; that the medical records themselves belied the critique that they might be inadequate or lacking in detail, although there were some mistakes made; that the ultimate question was not the amount of detail in the documentation but rather whether LB needed inpatient psychiatric care; and that Dr. Hyatt is a practicing psychiatrist with extensive experience in the acute psychiatric setting, whereas Dr. Tinsman is not. OMPA reversed the denial of reimbursement for the March 6 through 12 hospitalization dates, finding that DHS had failed to overcome the statutory presumption in favor of medical necessity and that, even absent the presumption, a preponderance of the evidence weighed in favor of medical necessity of this treatment.

7

Appellate courts refuse to substitute their own judgment for that of an agency. *J.C. v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 131, 572 S.W.3d 878. It is the prerogative of the agency to believe or disbelieve the testimony of any witness and to decide what weight to give the evidence. *Id.* When conducting our review, we look to the findings of the administrative agency, keeping in mind that courts have held that the hearing officer is in the best position to determine the credibility of witnesses and decide the proper weight to give the evidence. *Id.*

Given our standard of review, we hold that substantial evidence supports the decision of the agency. The agency had detailed testimony about LB and his care needs from LB's treating psychiatrist. Dr. Hyatt, who has years of experience in acute psychiatric care, opined that, in his medical judgment, LB needed continued inpatient treatment from March 6 to 12, 2019. The agency clearly found Dr. Hyatt's testimony more compelling than Dr. Tinsman's. The agency is the sole determiner of credibility and weight to be given to evidence. Because the agency's decision is supported by substantial evidence, the decision cannot be classified as arbitrary or capricious. *J.C.*, *supra*.

Affirmed.

BARRETT and HIXSON, JJ., agree.

*David Warford* and *Richard Rosen*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Friday, Eldredge & Clark, LLP*, by: *James M. Simpson* and *Kimberly D. Young*, for appellee.